## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| TEKNEK, LLC, | ) | Case No. 05 B 27545 |
| | ) | |
| Debtor. | ) | Judge Jacqueline P. Cox |
| | ) | |
| PHILLIP LEVEY, Trustee, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. No. 06 A 00412 |
| | ) | |
| SHEILA HAMILTON, JONATHAN | ) | |
| KENNETT, MARK ROLLINSON, | ) | |
| TEKENA USA, LLC, | ) | |
| and KENHAM, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

### MEMORANDUM OPINION and ORDER
#### on
#### "Motion to Dismiss Amended Adversary Proceeding Against Sheila Hamilton and Jonathan Kennett for Lack of Personal Jurisdiction, Forum Non Conveniens and Failure to State a Claim Pursuant to Rule 7012(b) of the Federal Rules of Bankruptcy Procedure"

Pursuant to Federal Rule of Bankruptcy Procedure 7012(b) and Federal Rule of Civil Procedure 12(b)(2) and (b)(6), two citizens of the United Kingdom, defendants Sheila Hamilton and Jonathan Kennett, have filed a motion to dismiss them from the instant adversary proceeding brought by the Chapter 7 bankruptcy trustee, alleging that this U.S. Bankruptcy Court lacks personal jurisdiction over them; that the doctrine of *forum non conveniens* entitles them to a dismissal; and that the complaint fails to state any causes of action against them.

### Background and Nature of the Civil Complaint

1

Teknek, LLC filed a Chapter 7 bankruptcy case on July 12, 2005,[1] disclosing $73.22 in total assets and total liabilities of $3,788,609.57. Over ninety-nine percent of these liabilities, or approximately $3,779,000, belongs to a single unsecured judgment creditor, Systems Division, Inc. ("SDI"). The two members of the debtor are the moving defendants: Jonathan Kennett ("Kennett") and Sheila Hamilton ("Hamilton").

The complaint sets forth the following background, for which the Court previously entered certain preliminary factual findings published as part of *In re Teknek, LLC*, 343 B.R. 850 (Bankr. N.D. Ill. 2006). Defendants Hamilton and Kennett formed the debtor Teknek, LLC in Illinois in 1996 to sell the circuitry boards, cleaning devices, and other products of the Scottish concern Teknek Electronics, Ltd. in the United States. The Chapter 7 debtor Teknek, LLC and two of the adversary proceeding defendants, Teknek America/Kenham, LLC and Tekena USA, LLC, were each, at some point in time, U.S. distributors for two affiliated Scottish "Teknek" companies, the first known as Teknek Electronics and the second known, after the foreign insolvency proceedings of the first one, as Teknek Manufacturing. The three American "Teknek" companies implicated in this adversary proceeding do not have parent-subsidiary relationships with other "Teknek" companies; these companies are directly and separately owned by defendant LLC members Kennett and Hamilton – with the notable exception of Tekena USA, LLC, which the four former employees of Teknek, LLC and Teknek America/Kenham, LLC own. Hamilton, as vice president, owns 15% of the debtor Teknek, LLC, while Kennett, as president, owns 85%. A U.S. distributorship for the Scottish "Teknek" group of companies has

---

[1] As it was filed prior to October 17, 2005, the case is governed by the law as it existed prior to Congress's enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. 109-8.

operated out of Illinois using three successive Illinois limited liability companies: the Chapter 7
debtor Teknek, LLC, defendant Teknek America/Kenham, LLC, and defendant Tekena USA,
LLC.

After the Chapter 7 trustee retained as special bankruptcy counsel the law firm that had
represented creditor SDI in attempting to collect the money judgment, *see* 11 U.S.C. § 327(c), he
filed a five-count "Verified Adversary Complaint" on January 19, 2006.  The complaint named
as defendants six individuals, including the movants herein, Kennett and Hamilton, as well as the
two business entities carrying on the two successive U.S. distributorships for Teknek-brand
products: Teknek America/Kenham, LLC and Tekena USA, LLC.  The other four individual
defendants are members of the limited liability company Tekena USA, LLC and former
employees of the prior two distributorships.[2]  Count I alleges factually and constructively
fraudulent conveyances under 11 U.S.C. § 544(b) and 740 Ill. Comp. Stat. 160/5 in the form of
Teknek, LLC's transfer of 1) certain tangible and intangible business assets to defendant Teknek
America/Kenham, LLC and 2) large amounts of money to defendants Kennett and Hamilton;
Tekena USA is alleged to be a subsequent transferee under 11 U.S.C. § 550 with respect to the
first set of transfers.  Count II requests that the veils of the American Teknek entities Kennett and
Hamilton own be pierced so that the patent-infringement judgment will be enforceable directly
against Kennett and Hamilton.  Count III alleges that Kennett and Hamilton received wrongful
distributions of profit from a limited liability company within the meaning of 805 Ill. Comp. Stat.
180/25-30 and -35.  Count IV alleges that Kennett and Hamilton breached fiduciary duties to the
debtor and its creditors within the meaning of 805 Ill. Comp. Stat. 180/15-3.  Count V is not at

---

[2]The Court dismissed three of these four individual defendants in a separate ruling.

3

issue in this motion to dismiss.

## A. Motion to Dismiss for Lack of Personal Jurisdiciton and Failure to State a Claim

Kennett and Hamilton contend that the only interests present in this civil proceeding are those of the sole noninsider bankruptcy-estate creditor, SDI, which represents a California interest, and two citizens of the United Kingdom, Kennett and Hamilton. Illinois allegedly has no interest in this civil case whatsoever. In spite of the fact that the limited liability company of which they are members is physically located in, doing business in, and organized under the laws of Illinois, Kennett and Hamilton contend that their only remotely relevant contacts with Illinois are three visits for international trade shows since 2003 and that their attendance at these shows is not at issue under any of the four counts in the civil complaint. In the two affidavits supporting this motion, the defendants include none of their member conduct with respect to the Chapter 7 debtor Teknek, LLC, apparently based on the understanding that the conduct of a limited-liability-company member is the conduct of the LLC itself. Moreover, the defendants assert that to the extent they are accused of conduct constituting the initiation and receipt of factually and constructively fraudulent transfers, they engaged in all of the planning, direction, and control of such conduct while they were in Scotland, not in Illinois. To the extent that this same conduct had effects elsewhere, they assert that those effects could only have been in California, where creditor SDI has its base, not in Illinois. Regarding the effects of their conduct in Illinois, Kennett and Hamilton further cite a federal diversity-jurisdiction case utilizing the Illinois long-arm statute (and related Illinois case law) for the proposition that when all of a defendant's allegedly tortious conduct occurs outside Illinois, and the tort is completed in Illinois

4

only because an economic injury transpired in Illinois, the plaintiff may establish personal

jurisdiction over the defendant only if the plaintiff establishes that the defendant had an intent to

affect an Illinois interest. *E.g., Celozzi v. Boot*, 2000 WL 1141568 (N.D. Ill. Aug 11, 2000).

Since Kennett and Hamilton contend that the only economic interest affected is that of sole

bankruptcy creditor SDI in California, they reason that they could not have had an intent to affect

an Illinois interest and thus could not be subject to specific personal jurisdiction under Illinois

law.

        These arguments are based on at least three premises:  that the point of reference for

the grouping of minimum contacts for a civil proceeding in bankruptcy is a single state such as

Illinois; that an Illinois limited liability company rendered into Chapter 7 insolvency through a

defendant-member's transfers is not an affected Illinois economic interest; and that a business

entity's protective veil shields an individual agent's conduct on behalf of that entity from

inclusion among the minimum contacts aggregated for purposes of personal jurisdiction over

such individual.  We examine all three premises under well-established precedents discussed

below.

        Kennett and Hamilton start with a complaint that the Chapter 7 trustee failed to

affirmatively plead the allegations of personal jurisdiction.  They do not support the requirement

with any authority and, indeed, misapprehend the law.  A complaint commencing an civil

proceeding must allege the basis for subject matter jurisdiction but need not allege the basis for

personal jurisdiction. Fed. R. Civ. Pro. 8(a); *Purdue Research Foundation v. Sanofi-Synthelabo,

S.A.*, 338 F.3d 773, 782 (7th Cir. 2003); *In re Enron Corp.*, 316 B.R. 434, 439-40 (Bankr.

S.D.N.Y. 2004); *Federalpha Steel LLC Creditors Trust v. Fed. Pipe & Steel Corp. (In re*

*Federalpha Steel LLC)*, 341 B.R. 872, 884 (Bankr. N.D. Ill. 2006). Only if the defendant

actually challenges the court's personal jurisdiction must the plaintiff establish by affidavit or

hearing that it has personal jurisdiction over the defendant. *Purdue Research Foundation*, 338

F.3d at 782; *Federalpha Steel LLC Creditors Trust*, 341 B.R. at 884.

For a preliminary dispute over personal jurisdiction, the Court makes factual

determinations in one of two ways, depending on whether an evidentiary hearing is held. "It may

determine the motion on the basis of affidavits alone; or it may permit discovery in aid of the

motion; or it may conduct an evidentiary hearing on the merits of the motion." *Marine Midland

Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2nd Cir. 1981). Where no hearing is held, as in this

case, the Court considers the allegations of the complaint as well as written evidentiary

submissions and affidavits, if any, from both sides, *e.g.*, *Merkel Associates v. Bellofram Corp.*,

437 F.Supp. 612, 616 (W.D.N.Y. 1977); *Interlease Aviation Investors II (Aloha) L.L.C. v.

Vanguard Airlines*, 262 F.Supp.2d 898, 904-05 & n.3 (N.D. Ill. 2003), and the plaintiff need only

demonstrate a prima facie showing of personal jurisdiction. *Marine Midland Bank, N.A. v.

Miller*, 664 F.2d 899, 904 (2nd Cir. 1981); *Torco Oil Co. v. Innovative Thermal Corp.*, 730

F.Supp. 126, 128 (N.D. Ill. 1989); *Celozzi v. Boot*, 2000 WL 1141568, at \*1-\*2 (N.D. Ill. Aug

11, 2000); *Federalpha Steel LLC Creditors Trust v. Fed. Pipe & Steel Corp. (In re Federalpha

Steel LLC)*, 341 B.R. 872, 884 (Bankr. N.D. Ill. 2006). Any conflicts between the defendant's

affidavit and the complaint must be resolved in favor of the defendant; however, conflicts

between each side's affidavits must be resolved in favor of the plaintiff. *YKK USA v. Baron*, 976

F.Supp. 743, 744, 746 n.4 (N.D. Ill. 1997); *Interlease Aviation Investors II (Aloha) L.L.C. v.

Vanguard Airlines*, 262 F.Supp.2d 898, 904-05 & n.3 (N.D. Ill. 2003); *cf. Torco Oil Co. v.

6

*Innovative Thermal Corp.*, 730 F.Supp. 126, 128 (N.D. Ill. 1989). "[T]he denial of a preliminary challenge to personal jurisdiction, like the denial of a preliminary injunction, is not an automatic bar to the renewal of the motion after evidence bearing on it has been obtained by pretrial discovery or presented at trial." *Rice v. Nova Biomedical Corp.*, 38 F.3d 909, 914-15 (7th Cir. 1994).

In personal jurisdiction litigation, one must first look to whether a particular statute or rule with the force of a statute governs personal jurisdiction in federal court. *Federalpha Steel LLC Creditors Trust v. Fed. Pipe & Steel Corp. (In re Federalpha Steel LLC)*, 341 B.R. 872, 886-87 (Bankr. N.D. Ill. 2006). Then, if a particular state's long-arm statute is used, one may need to look at the constitutional limitations of the relevant state's law. Finally, one will always need to determine whether any assertion of personal jurisdiction by the sovereign comports with the Due Process Clause of either the Fifth Amendment or the Fourteenth Amendment to the U.S. Constitution. *Celozzi v. Boot*, 2000 WL 1141568, at *4 (N.D. Ill. Aug 11, 2000); *e.g., Interlease Aviation Investors II (Aloha) L.L.C. v. Vanguard Airlines*, 262 F.Supp.2d 898, 905-06 (N.D. Ill. 2003). Depending on the nature of the action and substantive law, the scope of the long-arm statute or rule, and the identity of the sovereign, these inquiries may collapse into as few as one or two inquiries. *E.g., YKK USA v. Baron*, 976 F.Supp. 743, 745 (N.D. Ill. 1997).

The first inquiry dealing with the existence of a federal statute or a rule with the force of a statute is a necessary beginning point. This is true because the two due-process clauses of the U.S. Constitution are limits on American courts' authority and not sources of it, *e.g., Celozzi v. Boot*, 2000 WL 1141568, at *3-*4 (N.D. Ill. Aug 11, 2000), and notably, a federal common law of personal jurisdiction – even for federal-question cases – does not exist. *See generally*

*United Rope Distributors v. Seatriumph Marine Corp.*, 930 F.2d 532, 534-35 (7th Cir. 1991)

(citing *Omni Capital International, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 108 S.Ct. 404

(1987)). Furthermore, the affirmative authority for a federal court's personal jurisdiction over a

defendant must originate in a legislative creation. *Id.*

In an adversary proceeding pending in a U.S. bankruptcy court as part of a bankruptcy

case under Title 11, the rule-based provision applicable to the step-one question is Bankruptcy

Rule 7004. "The Bankruptcy Rules were promulgated by the Supreme Court pursuant to

authority granted by Congress in 28 U.S.C. § 2075. As such, the Rules have the force of law." *In

re Brooks Fashion Stores*, 124 B.R. 436, 440 (Bankr. S.D.N.Y. 1991). The first provision

relevant to this discussion provides as follows:

> (f) Personal jurisdiction
> If the exercise of jurisdiction is consistent with the Constitution and laws of
> the United States, serving a summons or filing a waiver of service in
> accordance with this rule . . . is effective to establish personal jurisdiction
> over the person of any defendant with respect to a case under the
> [Bankruptcy] Code or a civil proceeding arising under the Code, or arising
> in or related to a case under the Code.

Fed. R. Bankr. Pro. 7004(f); *Federalpha Steel LLC Creditors Trust v. Fed. Pipe & Steel Corp.

(In re Federalpha Steel LLC)*, 341 B.R. 872, 887 (Bankr. N.D. Ill. 2006) (describing 7004(f) as a

"worldwide service of process" provision); *compare* Fed. R. Civ. Pro. 4(k)(2) (parallel provision

for federal-question-jurisdiction cases involving foreign defendants). In order to serve process

"in accordance with this rule," the plaintiff in turn looks to another subsection of the same rule to

find the specific method of service of summons for a particular type of defendant. *See, e.g.*, Fed.

R. Civ. Pro. 4(f); Fed. R. Bankr. Pro. 7004(a). By delineating the geographical scope of the

summons, the following provision further indicates the intended reference point for the personal

jurisdiction extended to federal courts under Bankruptcy Rule 7004:

> (d) Nationwide service of process
> The summons and complaint and all other process except a subpoena may
> be served anywhere in the United States.

Fed. R. Bankr. Pro. 7004(d). Because of both (d) and (f) of Rule 7004, federal courts hold that in
order to determine whether a defendant is constitutionally amenable to service of process in an
adversary proceeding in bankruptcy, the federal bankruptcy court's assertion of personal
jurisdiction need only satisfy the Fifth Amendment to the U.S. Constitution, which in turn
requires that the defendant has satisfied the minimum-contacts tests with respect to the United
States as a whole (i.e., with respect to the sovereign of which the court is an extension). *Enron
Corp. v. Arora (In re Enron Corp.)*, 316 B.R. 434, 440, 442, 444-46 & n.8 (Bankr. S.D.N.Y.
2004); *Federalpha Steel LLC Creditors Trust v. Fed. Pipe & Steel Corp. (In re Federalpha Steel
LLC)*, 341 B.R. 872, 887-88 (Bankr. N.D. Ill. 2006); *see also Application to Enforce
Administrative Subpoenas Duces Tecum of S.E.C. v. Knowles*, 87 F.3d 413, 417 (10th Cir. 1996)
("When the personal jurisdiction of a federal court is invoked based upon a federal statute
providing for nationwide or worldwide service, the relevant inquiry is whether the respondent has
had sufficient minimum contacts with the United States."); *Kohler Co. v. Titon Industries*, 948
F.Supp. 815, (E.D. Wis. 1996) ("And, of course, the national contacts test is applied when a
federal statute provides for national or worldwide service."); *cf. Republic of Panama v. BCCI
Holdings (Luxembourg) S.A.*, 119 F.3d 935, 945-48 (11th Cir. 1997). Because subject matter
jurisdiction in the present proceeding is based on the federal-bankruptcy-jurisdiction statute, 28
U.S.C. § 1334(b) – not on diversity of citizenship (§ 1332(a)) or the existence of a federal

9

question[3] (§ 1331) – any question under the state constitution and long-arm statute drops out

completely, *In re Schwinn Bicycle Co.*, 192 B.R. 461, 471 (Bankr. N.D. Ill. 1996), and the

bankruptcy court performs a single minimum-contacts analysis under the Fifth Amendment to

determine whether the defendant is amenable to service of process in the United States. *Contra*

*Brooks Fashion Stores*, 124 B.R. 436, 440 (Bankr. S.D.N.Y. 1991) (concluding that the

nationwide-service-of-process standard from Bankruptcy Rule 7004(d) means that no minimum-

contacts test applies – not concluding that Fifth Amendment standards for two American entities

would be satisfied easily).  Kennett and Hamilton did not correctly identify and apply the

national-contacts test under the Fifth Amendment.  Because the defendants Kennett and

Hamilton have not challenged personal jurisdiction on the basis of any supposed defects in the

actual service of process or the method utilized but challenge their amenability to service of

process, this is the only inquiry.

      Traditionally, the minimum-contacts analysis under the federal constitution has two

components:  1) whether the defendant has reached out to the sovereign's jurisdiction by

establishing enough minimum contacts with that forum to have purposely availed himself of the

privileges and protections of conducting activities within the forum, and 2) whether any personal

jurisdiction asserted on account of the minimum contacts comports with traditional notions of

---

[3]In some federal-question cases between two U.S. citizens, federal courts will still apply the state's long-
arm statute, as limited by the Fourteenth Amendment and the related state-wide minimum contacts, to the U.S.
defendant, *Kohler Co. v. Titon Industries*, 948 F.Supp. 815 (E.D. Wis. 1996), though the practice of not utilizing the
Fifth Amendment in any federal-question case has been questioned, *United Rope Distributors v. Seatriumph
Marine Corp.*, 930 F.2d 532, 535-36 (7th Cir. 1991); *In re Schwinn Bicycle Co.*, 192 B.R. 461, 470-71
(Bankr. N.D. Ill. 1996).  *But cf. Enron Corp. v. Arora (In re Enron Corp.)*, 316 B.R. 434, 440 (Bankr. S.D.N.Y.
2004) (mistakenly referring to avoidance proceeding under Chapter 5 of the U.S. Bankruptcy Code as an action
arising under federal-question jurisdiction rather than one arising under § 1334(b) bankruptcy jurisdiction, but
nevertheless correctly applying the Fifth Amendment national-contacts test).

fair play and substantial justice. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472-78, 105

S.Ct. 2174 (1985); *YKK USA v. Baron,* 976 F.Supp. 743, 745-46 (N.D. Ill. 1997); *Federalpha*

*Steel LLC Creditors Trust v. Fed. Pipe & Steel Corp. (In re Federalpha Steel LLC),* 341 B.R.

872, 887-88 (Bankr. N.D. Ill. 2006). Federal Courts apply the same "minimum contacts" test

under both the Fifth and Fourteenth Amendments, the only practical difference being the

geography to which the minimum contacts are connected. *In re Federalpha Steel LLC,* 341 B.R.

at 887 n.11 & 888 n.12. Under the Fifth Amendment, though, federal courts have debated

whether the second part of the test should even remain, the statutory venue provisions of Title 28

being adequate to locate the particular district that would be the site of the most efficient, fair,

and logical place to conduct a trial within the U.S. forum. *Cf. United Rope Distributors v.*

*Seatriumph Marine Corp.,* 930 F.2d 532, 534 (7th Cir. 1991) (dicta); *Enron Corp. v. Arora (In re*

*Enron Corp.),* 316 B.R. 434, 442, 446-49 (Bankr. S.D.N.Y. 2004), *with Republic of Panama v.*

*BCCI Holdings (Luxembourg) S.A.,* 119 F.3d 935, 945-48 (11th Cir. 1997); *see generally*

*Federalpha Steel LLC,* 341 B.R. at 888 n.12. That debate at times involves situations where a

plaintiff sues a U.S. citizen and domiciliary in a federal district that is far from that defendant's

base, but since the large forum of the sovereign easily encompasses the defendant's domicile, the

minimum-contacts test is automatically satisfied. *E.g., Republic of Panama,* 119 F.3d at 945-48;

*Enron Corp.,* 316 B.R. at 440, 442, 446-49 & n.8. The better approach when dealing with a non-

U.S. citizen as a defendant is to continue to apply the second part of the traditional Fourteenth

Amendment analysis. *See, e.g., Federalpha Steel LLC,* 341 B.R. at 889-90 & n.12.

   1. Aggregation of the Debtor's Members' Minimum Contacts With Respect to the U.S. Forum

        Kennett and Hamilton's opposition to personal jurisdiction is based primarily on the

assumption that whatever business they conducted on behalf of the debtor Teknek, LLC in

Illinois would count only as the minimum contacts justifying personal jurisdiction over the

debtor, which is not contesting personal jurisdiction; the corporate shield having blocked them

from the legal effects of their business's minimum contacts, they are left with a few, *de minimus*

personal contacts that are insufficient to meet the minimum standards and are unrelated to the

causes of action on which the trustee is suing them. The real issue, then, is what conduct of

Kennett and Hamilton may be aggregated against them for purposes of asserting personal

jurisdiction against them as individuals and what conduct, if any, counts only for asserting

personal jurisdiction over the Chapter 7 debtor Teknek, LLC (which is not contested). The

Supreme Court answered this question:

> Petitioners are correct that their contacts with California are not to be judged
> according to their employer's activities there. On the other hand, their status
> as employees does not somehow insulate them from jurisdiction. Each
> defendant's contacts with the forum State must be assessed individually. *See
> Rush v. Savchuk*, 444 U.S., at 332, 100 S.Ct., at 579 ("The requirements of
> *International Shoe* . . . must be met as to each defendant over whom a state
> court exercises jurisdiction"). In this case, petitioners are primary
> participants in an alleged wrongdoing intentionally directed at a California
> resident, and jurisdiction over them is proper on that basis.

*Calder v. Jones*, 465 U.S. 783, 790, 104 S.Ct. 1482, 1487 (1984). While *Calder* indicates that a

company's contacts with a forum that are independent of an individual employee's contacts with

the same forum are not to be aggregated against the individual employee for purposes of the

minimum-contacts analysis of personal jurisdiction, it simultaneously indicates that for purposes

of specific personal jurisdiction, the conduct in which the individual employees personally and

actually engage as part of their employment duties do count against them in spite of the fact that

they engaged in the activities as employees of a business entity. In other words, the shield of the

corporation is not a defense if an employee is the corporation's "primary participant" in a course

of allegedly tortious or otherwise illegal conduct in a foreign forum that the employee knows will

have some type of effect in the forum asserting the long-arm personal jurisdiction.[4] *See id.*, 465

U.S. at 789-91; *cf. Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 480 (1985). Under the U.S.

Constitution it is permissible to re-count (or bootstrap) the contacts of a corporation against the

associated individual when performing the analysis for each; what is important is that in

attributing any business conduct to the individual, such person must have been actually engaging

in or controlling the double-counted activity. *Columbia Briargate Co. v. First Nat. Bank in

Dallas*, 713 F.2d 1052, 1064-65 (4th Cir. 1983) (referring to "direct personal involvement"

standard); *Application to Enforce Administrative Subpoenas Duces Tecum of S.E.C. v. Knowles*,

87 F.3d 413, 417-19 (10th Cir. 1996); *Interlease Aviation Investors II (Aloha) L.L.C. v.

Vanguard Airlines*, 262 F.Supp.2d 898, 908-10 (N.D. Ill. 2003) (stating that imputation of

corporate contacts would not be permitted unless the stockholders controlled, dominated,

supervised, or directed the contacts at issue); *cf. Burger King Corp.*, 471 U.S. 462, 479 & n.22

(1985).

        In a case where a federal court asserts personal jurisdiction against the two members of

a limited liability company with *only* two members and a handful of employees, virtually all of

the significant planning, acting, directing, and masterminding will be attributable to one member,

the other, or both, making them the "primary participants" within the meaning of *Calder*. The

---

[4]Certain federal courts once questioned whether personal jurisdiction over a corporation could
constitutionally result in personal jurisdiction over a corporate agent who committed a business tort outside the
forum jurisdiction in which the ultimate injury occurred but who had no other "independent personal contacts" with
such forum. *Merkel Associates v. Bellofram Corp.*, 437 F.Supp. 612, 619 n.3, 620 (W.D.N.Y. 1977). This line of
authority is not consistent with the subsequent *Calder* line looking merely at the foreign effects of a defendant-
employee's direct personal involvement or primary participation in the tort.

13

nonprevailing reporter and editor being sued for libel in *Calder*, for instance, were at least able to credibly argue that they could not control the National Enquirer's marketing activity resulting in wide circulation in the California state court forum. *See Calder v. Jones*, 465 U.S. at 789. The members or shareholders of a company with a smaller, narrower base of ownership and control compared to the National Enquirer cannot argue lack of control regarding the conduct of which the plaintiff complains.

Essentially, Kennett and Hamilton are arguing that for purposes of personal jurisdiction, the contacts of the debtor Teknek, LLC may not be bootstrapped onto them in order to determine whether the forum has personal jurisdiction over them in their individual capacity. Although they do not correctly identify it as such, the foreign defendants' opposition to personal jurisdiction really amounts to an assertion of what is known as the fiduciary shield doctrine. This doctrine, however, is a discretionary, equitable doctrine certain states have employed to limit the reach of state constitutions and long-arm statutes. *E.g., Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899 (2nd Cir. 1981) (recognizing doctrine under New York's long-arm statute); *Merkel Associates v. Bellofram Corp.*, 437 F.Supp. 612, 618-20 (W.D.N.Y. 1977) (same); *Torco Oil Co. v. Innovative Thermal Corp.*, 730 F.Supp. 126, 135 n.20 (N.D. Ill. 1989) (same); *Rollins v. Ellwood*, 565 N.E.2d 1302, 1316-18 (Ill. 1990) (recognizing doctrine "under Illinois' due process clause and the tenets of our concept of the jurisdictional power of the Illinois courts"); *see also Rice v. Nova Biomedical Corp.*, 38 F.3d 909, 912-13 (7th Cir. 1994) (applying doctrine using Illinois law in a diversity case). It is not, however, a limitation imposed by federal constitutional law, *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 902 n.3 (2nd Cir. 1981); *Balance Dynamics Corp. v. Schmitt Industries*, 204 F.3d 683, 697-98 (6th Cir. 2000); *Columbia Briargate*

14

*Co. v. First Nat. Bank in Dallas*, 713 F.2d 1052, 1055-65 (4th Cir. 1983); *Kinetic Instruments v.*

*Lares*, 802 F.Supp. 976, 981 n.2 (S.D.N.Y. 1992) (citing *Calder v. Jones*, 465 U.S. 783); *Mobil*

*Oil Corp. v. Advanced Environmental Recycling Technologies*, 833 F.Supp. 437, 442 (D. Del.

1993) (same); *Torco Oil Co. v. Innovative Thermal Corp.*, 730 F.Supp. 126, 135 n.20 (N.D. Ill.

1989), which is what we are dealing with in the present case.[5]

---

[5]Assuming *arguendo* that it would apply in the case at bar, this doctrine says that when personal jurisdiction is proper over some business entity, the underlying jurisdictional contacts of individual corporate employees or agents are not sufficient to establish additional personal jurisdiction over the individuals who were merely representing the business entity or other principal in the forum when it engaged in whatever conduct created the basis for long-arm specific personal jurisdiction. *YKK USA v. Baron*, 976 F.Supp. 743, 747 (N.D. Ill. 1997); *Interlease Aviation Investors II (Aloha) L.L.C. v. Vanguard Airlines*, 262 F.Supp.2d 898, 912-13 (N.D. Ill. 2003). The scenario of greatest concern under this doctrine is one in which an employee or officer of a corporation merely followed his employer's orders in carrying on corporate business and did so for the employer's benefit, not his own direct benefit or personal interests, but he nevertheless finds himself forced to personally defend in a distant forum. *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899 (2nd Cir. 1981); *Vanguard Airlines*, 262 F.Supp.2d at 912-13; *YKK USA v. Baron*, 976 F.Supp. at 747; *Torco Oil Co. v. Innovative Thermal Corp.*, 730 F.Supp. 126, 134-35 (N.D. Ill. 1989); *Rollins v. Ellwood*, 565 N.E.2d 1302, 1316-18 (Ill. 1990). The application of the doctrine, being based entirely on equitable principals, is entirely discretionary. *Torco Oil Co. v. Innovative Thermal Corp.*, 730 F.Supp. at 135.

The corollary to the rule is that an individual defendant's behavior that is also motivated by self-interest is not protected activity. *Torco Oil Co. v. Innovative Thermal Corp.*, 730 F.Supp. at 135-36; *Vanguard Airlines*, 262 F.Supp.2d at 912-13. The more an individual corporate defendant was carrying out orders and duties, and the less he exercised personal discretion and interest in creating the relevant contacts, the more likely it is that a court will find that a foreign individual defendant is entitled to a fiduciary shield from personal jurisdiction. *Vanguard Airlines*, 262 F.Supp.2d at 912-13. Being a director, officer, or member of management does not alone put a defendant within the corollary, though it most certainly puts him near or on the line. *Vanguard Airlines*, 262 F.Supp.2d at 912-13. Having a significant shareholder interest sufficient to create a direct financial stake in corporate business will definitely trigger the corollary and remove the shield protection. *Vanguard Airlines*, 262 F.Supp.2d at 912-13.

In addition to this corollary, one of the state-law exceptions to the doctrine is the "alter ego exception." *Torco Oil Co.*, 730 F.Supp. at 135-36; *Baron*, 976 F.Supp. at 744, 747. The exception permits the individual corporate defendant to be roped in with personal jurisdiction if the plaintiff makes a prima facie showing on only the second of the two elements required to pierce a corporate veil under state law: that the corporate form is a shell or a sham rather than a real, separate entity. *Torco Oil Co.*, 730 F.Supp. at 136-37; *Baron*, 976 F.Supp. at 747; *see also Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2nd Cir. 1981). Among other things, the trial court will examine whether the alleged alter ego of a debtor corporation commingles the corporation's assets or otherwise treats them as his own; it further examines whether the debtor corporation was undercapitalized, taking into account later withdrawals of capital and asking whether, in light of the business being done and the accompanying risk of loss, the "capital [was] reasonably adequate for prospective liability." *Torco Oil*, 730 F.Supp. at 136-39 & n.22. It will further examine whether the individual officers or shareholders depleted the business entity of assets and whether they created unexplained adjustments in financial statements. *Baron*, 976 F.Supp. at 746-47.

Yet another exception exists for fiduciaries of debtor corporations that are insolvent. *Torco Oil*, 730 F.Supp. at 135 n.21.

As vice-president and 15% owner of the debtor, Hamilton may or may not be entitled to the protection, depending on the equities of the case. *Vanguard Airlines*, 262 F.Supp.2d at 912-13. As president and 85% owner, Kennett most certainly would not receive the state-law protection as a threshold matter. *Vanguard Airlines*, 262

Even with the bootstrapping permitted under the U.S. Constitution, the analysis for
specific personal jurisdiction must focus on the nexus between the particular defendants, the
conduct in which they actually engaged (regardless of whether it is pursuant to a corporate or
employment obligation), the nature of the cause of action, and the forum asserting specific
personal jurisdiction  *See Calder v. Jones*, 465 U.S. at 788-89; *YKK USA v. Baron*, 976 F.Supp.
743, 745 (N.D. Ill. 1997).  Specific personal jurisdiction may exist in situations in which the
cause of action recognized by the forum stems from entirely foreign conduct that merely has
"effects" in the forum at issue.  *See Calder v. Jones*, 465 U.S. at 785-86 & n.4, 789.  The nature
of the cause of action helps one to focus not just on the types of contacts that would count for
purposes of the minimum contacts analysis but also in particular on whether those same contacts
are ones that would, under the governing substantive law, subject an individual officer, director,
or shareholder to potential liability in spite of a corporate or other business-entity form, *e.g.*,
*Lawlor v. Scheper*, 101 S.E.2d 269, 271 (S.C. 1957) (an agent of a principal is personally liable
for his own torts, such as fraud, in spite of acting on behalf of the principal and within the scope
of the agency, since legal duties of particular people to third parties are outside scope of veil
protection).  In *Calder* for example, the tort law governing libel actions potentially rendered an
individual reporter for the National Enquirer liable in a foreign state because he researched and

---

F.Supp.2d at 912-13.

 Defendants Kennett and Hamilton aggregately received $722,967 in profit distributions and returns of
capital during the year prior to the patent infringement judgment, which left the Chapter 7 debtor both insolvent and
undercapitalized (and in Chapter 7).  Therefore, even if the fiduciary shield doctrine were a component of federal
law, which it is not, Kennett and Hamilton might not be entitled to it, as the plaintiff herein appears to make prima
facie showings of more than one exception.

 If any of the fiduciary-shield exceptions apply, as in this case, or if the court finds in favor of the individual
corporate defendants for various equitable reasons, including self-interest, the bootstrapping (or double counting) of
corporate defendant contacts and individual defendant contacts would be permitted anyway under the Illinois
constitution, *Torco Oil Co.*, 730 F.Supp. at 128, 136; *Baron*, 976 F.Supp. at 845. 747-48, just as it is under federal
constitutional standards after *Calder*.

published an allegedly false article about the plaintiff's life and activities in such foreign state, while his employment by the Enquirer was apparently not material to the question of his having to appear in a foreign jurisdiction to answer for separate, individual liability.

Moreover, the fact that the *Calder* defendant had never actually stepped foot in the foreign state to prepare the article was not determinative of whether the emotional and financial effects he had personally directed into that jurisdiction were sufficient to implicate both the underlying substantive law (the tort law of libel and invasion of privacy) and the reasonable expectation that he could be haled into court there based on the same law. *See Calder v. Jones*, 465 U.S. at 785-86 & n.4; *see also Torco Oil Co. v. Innovative Thermal Corp.*, 730 F.Supp. 126, 134 n.18 (N.D. Ill. 1989) (defendant was the primary participant directing allegedly fraudulent representation at plaintiff residing in forum). In terms of what constitutes a sufficient contact for constitutional analysis, not only is the quality of the contact a low barrier but the frequency of the contact is also a minor threshold when it has a strong connection to the cause of action. "Even a single purposeful contact may be sufficient to meet the minimum contacts standard when the underlying proceeding is directly related to that contact," *Application to Enforce Administrative Subpoenas Duces Tecum of S.E.C. v. Knowles*, 87 F.3d 413, 419 (10th Cir. 1996) (citing *McGee v. International Life Ins. Co.*, 355 U.S. 220, 223 (1957)), and when such single purposeful contact "represent[s] a deliberate affiliation with the forum that renders foreseeable the possibility of being haled into court in the United States at least as to those specific contacts," *id. See also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 n.18, 105 S.Ct. 2174 (1985). Thus, when speaking of "contacts," it ought to be clear that we are not necessarily talking about direct physical contacts between a defendant and a forum. *See also Heritage House Restaurants v.*

17

*Continental Funding Group*, 906 F.2d 276, 283 (7th Cir. 1990) ("[The defendant] created a

relationship which is naturally based on telephone and mail contacts rather than physical

presence, and it should not be able to avoid jurisdiction based on that distinction."); *see also*

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476, 479, 105 S.Ct. 2174 (1985).

>    2.  Application of the Test for Minimum Contacts With the United States Forum

In Counts I through IV, we must look at the substantive law on which the plaintiff

relies and compare that law to Kennett and Hamilton's contacts with the forum (i.e., with the

United States).  We must then ask whether the contacts were related to effects within the forum

that these substantive laws were designed to prevent.  Although we could go through an elaborate

survey of Kennett and Hamilton's connections with this forum through the debtor and their

initiation of the transfer of nonmonetary business assets to other entities, we need only focus on

one discrete set of uncontroverted facts:  Kennett and Hamilton established a limited liability

company in Illinois, used that business entity to generate profits, used American banks as the

focal point for those funds, and then transferred all such funds through this focal point to

themselves as individuals,[6] leaving the limited liability company they created within the U.S.

forum without any money or assets to satisfy its creditors as disclosed in the bankruptcy-petition

schedules.  The initiation and acceptance of an LLC-member distribution from a company

located in the U.S. forum is a personal act connected to such forum, not an act of a business

entity.  As such, this simple, straightforward act relates to the substantive laws cited in Counts I

through IV in the following ways.

----

[6]The debtor's 2003 K-1 income-tax filing indicates that Hamilton received $154,138 and Kennett received
$568,829 for the fiscal year ending May 31, 2004. *See* Ex. E & F, Defendants' Motion to Dismiss Amended
Adversary Proceeding.

Count I alleges factually and constructively fraudulent conveyances under 11 U.S.C. §

544(b) and 740 Ill. Comp. Stat. 160/5 in the form of large amounts of cash transferred to

defendants Kennett and Hamilton.  Bankruptcy law permits the trustee to step into the shoes of a

creditor who could have avoided an actually fraudulent or a constructively fraudulent transfer of

a debtor's assets had no bankruptcy case been filed, using the following law:

> Uniform Fraudulent Transfer Act:  Transfer or obligation fraudulent as to
> creditor--Claim arising before or after transfer
> § 5. (a) A transfer made or obligation incurred by a debtor is fraudulent as to
> a creditor, whether the creditor's claim arose before or after the transfer was
> made or the obligation was incurred, if the debtor made the transfer or
> incurred the obligation:
> (1) with actual intent to hinder, delay, or defraud any creditor of the debtor;
> or
> (2) without receiving a reasonably equivalent value in exchange for the
> transfer or obligation, and the debtor:
> (A) was engaged or was about to engage in a business or a transaction for
> which the remaining assets of the debtor were unreasonably small in relation
> to the business or transaction; or
> (B) intended to incur, or believed or reasonably should have believed that he
> would incur, debts beyond his ability to pay as they became due.

740 Ill. Comp. Stat. 160/5 (2004).   The law is designed to prevent transfers with an intent to

hinder or delay creditors and transfers for little or no consideration at a time when the debtor

ought to believe that it will not be able to pay its obligations when they become due.  Kennett and

Hamilton's mere act of causing a withdrawal of money from a limited liability company

operating in the forum is a contact, the potential effects of which this law was designed to

prevent. This minimum contact contributed to the debtor's filing the Chapter 7 case at bar, as the

debtor's liabilities included a $3 million judgment offset by a mere $73.22 left to pay it; in other

words, the minimum contact contributed to the debtor's balance-sheet insolvency.  Moreover,

this single minimum contact contributed to the debtor's ability to avoid paying the same

19

judgment; was a transfer to insiders; coincided with a pending lawsuit and eventual jury verdict; and – being a distribution/dividend as opposed to a salary payment or loan repayment – may have been in exchange for less than reasonably equivalent value. That is, the single contact had a cognizable role in transfers that were allegedly both constructively and actually fraudulent. For these reasons, then, a nexus between the above statute and Kennett and Hamilton's initiation and receipt of LLC-member distributions exists, establishing the basis for specific personal jurisdiction. The same factual basis and set of legal assertions in Count I likewise state a claim upon which relief could be granted within the meaning of Federal Rule 12(b)(6).

Count II requests that the veils of the American Teknek entities Kennett and Hamilton own, including the debtor, be pierced. "To ignore a corporation's existence – a drastic step – there must be both (1) such a unity of interest and ownership that the separate personalities of person and corporation no longer exist, and (2) circumstances under which adherence to the fiction of corporate separateness would promote injustice or inequity." *In re Hansen*, 341 B.R. 638, 643 (Bankr. N.D. Ill. 2006) (citing *International Fin. Servs. Corp. v. Chromas Techs. Canada*, 356 F.3d 731, 736 (7th Cir.2004)). The first element is synonymous with asking whether the corporation is in fact a shell or a sham. When adjudicating this question under Illinois corporate law, courts consider the following criteria: "(1) the failure to maintain adequate corporate records or to comply with corporate formalities, (2) the commingling of funds or assets, (3) undercapitalization, and (4) one corporation treating the assets of another corporation as its own." *Van Dorn Co. v. Future Chemical and Oil Corp.*, 753 F.2d 565, 570 (7th Cir. 1985). The single contact of Kennett and Hamilton consisting of withdrawing distributions from the debtor limited liability company as its members, leaving it insolvent and without funds

to pay its creditors, bears upon the issue of whether the defendants treated the assets of the debtor as their own and whether they left it undercapitalized in anticipation of a judgment. To the extent that this single contact supports an inference of an alleged factually fraudulent conveyance as described above in Count I, it also implicates the second element necessary for recovering on this count: a showing that the adherence to the fiction of corporate separateness would promote injustice or fraud. Thus, a nexus between Kennett and Hamilton's conduct directed to the U.S. forum and Count II exists. The same factual basis and set of legal assertions in Count II likewise state a claim upon which relief could be granted within the meaning of Federal Rule 12(b)(6).

At this point, we will skip to Count IV. Count IV alleges that Kennett and Hamilton breached fiduciary duties to the debtor and its creditors within the meaning of 805 Ill. Comp. Stat. 180/15-3.

§ 15-3. General standards of member and manager's conduct.
(a) The fiduciary duties a member owes to a member-managed company and its other members include the duty of loyalty and the duty of care referred to in subsections (b) and (c) of this Section.
(b) A member's duty of loyalty to a member-managed company and its other members includes the following:
(1) to account to the company and to hold as trustee for it any property, profit, or benefit derived by the member in the conduct or winding up of the company's business or derived from a use by the member of the company's property, including the appropriation of a company's opportunity;
(2) to act fairly when a member deals with the company in the conduct or winding up of the company's business as or on behalf of a party having an interest adverse to the company; and
(3) to refrain from competing with the company in the conduct of the company's business before the dissolution of the company.
(c) A member's duty of care to a member-managed company and its other members in the conduct of a winding up of the company's business is limited to refraining from engaging in grossly negligent or reckless conduct, intentional misconduct, or a knowing violation of law.
(d) A member shall discharge his or her duties to a member-managed company and its other members under this Act or under the operating

21

> agreement and exercise any rights consistent with the obligation of good
> faith and fair dealing.

805 ILCS 180/15-3. The trustee, as representative of the estate of Teknek, LLC, can step into the

shoes of the debtor and bring any and all causes of action held under this section to the extent

that the debtor's members violated the above duties. 11 U.S.C. § 323, § 541(a), & § 704(1)-(2).

The duties Kennett and Hamilton owed the debtor included the duty of loyalty to account for and

hold in trust property, profits, and benefits derived in winding up the LLC's business affairs and

in using its property; the duty of care to avoid grossly negligent or reckless conduct while

winding up the LLC; and the duty to discharge these two aforementioned duties fairly and with

good faith. It is eminently plausible that an LLC member violates these 180/15-3 fiduciary duties

to such LLC by draining such entity of cash for his or her personal benefit while simultaneously

leaving it a hollow shell without any funds to pay its lawful creditors. In other words, it is

entirely plausible that the debtor–LLC's property and profits were not held in trust for the benefit

of winding up its affairs; the members receiving the distributions took no care, let alone

reasonable care, in winding up the affairs of the LLC in such as way that obligations that could

have been satisfied were satisfied; and, perhaps, the members furthermore did not handle the

LLC funds consistent with their obligations to discharge these fiduciary duties with fair dealing

and good faith. For these reasons, then, a nexus between the above statute and Kennett and

Hamilton's initiation and receipt of LLC-member distributions establishes the United States'

basis for personal jurisdiction. This same factual basis and set of legal assertions in Count IV

likewise state a claim upon which relief could be granted within the meaning of Federal Rule

12(b)(6).

22

The wrongful LLC distributions alleged in Count III are also legally tied to these same allegations, because if Kennett and Hamilton breached one of these Section 15-3 duties, as alleged, then one or both of them may be additionally liable under the Illinois Count IV, which is based on the following law:

> § 25-35. Liability for unlawful distributions.
> (a) A member of a member-managed company or a member or manager of a manager-managed company who votes for or assents to a distribution made in violation of Section 25-30, the articles of organization, or the operating agreement is personally liable to the company for the amount of the distribution that exceeds the amount that could have been distributed without violating Section 25-30, the articles of organization, or the operating agreement if it is established that the member or manager did not perform the member or manager's duties in compliance with Section 15-3.
> (b) A member of a manager-managed company who knew a distribution was made in violation of Section 25-30, the articles of organization, or the operating agreement is personally liable to the company, but only to the extent that the distribution received by the member exceeded the amount that could have been properly paid under Section 25-30.

805 ILCS 180/25-35. "The amount of the distribution that exceeds the amount that could have been distributed without violating Section 25-30" is in turn determined with reference to the following provision:

> § 25-30. Limitations on distributions.
> (a) A distribution may not be made if:
> (1) the limited liability company would not be able to pay its debts as they become due in the ordinary course of business; or
> (2) the company's total assets would be less than the sum of its total liabilities plus the amount that would be needed, if the company were to be dissolved, wound up, and terminated at the time of the distribution, to satisfy the preferential rights upon dissolution, winding up, and termination of members whose preferential rights are superior to those receiving the distribution.

805 ILCS 180/25-30. The trustee, as representative of the estate of Teknek, LLC, can step into the shoes of the debtor enterprise and bring any and all causes of action held under the above

23

provisions to the extent that the debtor's members violated the above restrictions.  11 U.S.C. §

323, § 541(a), & § 704(1)-(2).  Essentially, what this Illinois statute says is that an LLC member

may not cause a dividend or distribution to himself or herself if such payment would leave the

LLC practically or actually insolvent; otherwise, the member is liable to the LLC for the amount

that exceeds the amount that could have properly been paid.  The mere act of causing a

withdrawal of money from a limited liability company operating in the forum is a contact, the

effects of which this law was designed to prevent.[7]  For these reasons, then, a nexus between the

above two statutory provisions and Kennett and Hamilton's initiation and receipt of LLC-

member distributions exists, establishing the basis for specific personal jurisdiction.  The same

factual basis and set of legal assertions in Count III likewise state a claim upon which relief could

be granted within the meaning of Federal Rule 12(b)(6).

            Kennett and Hamilton have cited a line of authority for the proposition that when

personal jurisdiction is based on the mere fact that the tort became complete within the forum

jurisdiction because an *economic* injury occurred there, then the plaintiff must also establish the

defendant's intent to affect an economic interest in that particular forum:  *Interlease Aviation*

*Investors II (Aloha) L.L.C. v. Vanguard Airlines*, 262 F.Supp.2d 898, 910-11 (N.D. Ill. 2003),

and *Celozzi v. Boot*, 2000 WL 1141568 (N.D. Ill. Aug 11, 2000).  *Interlease Aviation* and *Celozzi*

in turn rely on *Stein v. Rio Parismina Lodge*, 296 Ill.App.3d 520 (Ill. App. Ct. 1998), and *Arthur*

*Young & Co. v. Bremer*, 197 Ill.App.3d 30, 35-38, 44-45 (Ill. App. Ct. 1990), which demonstrate

---

[7]Kennett and Hamilton get hung up on the red herring the trustee threw into the complaint:  that their 2003
distributions to themselves exceeded the amount of ordinary income reported for the year.  Kennett and Hamilton
explain that the return shows that the excess came from a pre-existing capital fund.  Under the governing substantive
law, it is irrelevant whether a member distribution consists of current revenue, a reserve or other accumulated fund,
or any combination thereof.

that the rule on which Kennett and Hamilton rely is actually a rule derived from the inapplicable

Illinois long-arm statute, not on the minimum-contacts tests derived from the federal due-process

interpretations.  Under the federal constitutional standards, "[t]he notion of 'foreseeability'

relevant in determining whether minimum contacts exist is not the foreseeability of causing

injury in another state but rather the foreseeability that 'the defendant's conduct and connection

with the forum [s]tate are such that he should reasonably anticipate being haled into court there.'"

*FMC Corp. v. Varonos*, 892 F.2d 1308, 1313 (7th Cir. 1990); *see also Burger King Corp. v.*

*Rudzewicz*, 471 U.S. 462, 474, 105 S.Ct. 2174 (1985).

And, even if this intent-to-inflict-economic-harm rule were a Fifth Amendment

extension of the *Calder* extraterritorial-effects test, the defendants' argument has at least two

weaknesses.  First, they base their argument on the assumption that sole-bankruptcy-creditor SDI

is the only possible economic interest Kennett and Hamilton could have possibly intended to

affect by the transfer of assets, though SDI's economic interests are in California, not Illinois.

But under the Fifth Amendment national-contacts analysis, the test would be modified to require

an intent to affect a U.S. interest, and SDI is indeed such a financial interest.  Second, SDI is not

the only entity feeling the effects of the member distributions:  we are here in this Chapter 7 case

because the Illinois debtor Teknek, LLC has no valuable tangible assets.  The resulting causes of

action under Counts III and IV are in fact legal claims that the Chapter 7 debtor itself held against

its members until they became property of the estate administered by the trustee.  11 U.S.C. §

323, § 541(a), & § 704(1)-(2).  Finally, it is eminently reasonable to infer that knowingly causing

and receiving a $722,967 member distribution from an American LLC shows an intent to affect

the economic interests of both the U.S. LLC and its U.S. creditors.

3. Traditional Notions of Fair Play and Substantial Justice

Once specific personal jurisdiction is appropriate on the basis of minimum contacts with

respect to the United States as a whole, as it is here, a defendant may defeat jurisdiction only if

the assertion of jurisdiction offends traditional notions of fair play and substantial justice. *YKK*

*USA v. Baron*, 976 F.Supp. 743, 745-47 (N.D. Ill. 1997). The defendant who loses under the first

prong has a heightened burden if he wants to prevail on the second, because "he must present a

compelling case that the presence of some other considerations would render jurisdiction

unreasonable." *Burger King*, 471 U.S. at 477; *see also Interlease Aviation Investors II (Aloha)*

*L.L.C. v. Vanguard Airlines*, 262 F.Supp.2d 898, 909 (N.D. Ill. 2003). Thus, the burden switches

to the defendant on the second prong. *E.g.*, *Federalpha Steel LLC Creditors Trust v. Fed. Pipe*

*& Steel Corp. (In re Federalpha Steel LLC)*, 341 B.R. 872, 888-90 (Bankr. N.D. Ill. 2006). The

following considerations are evaluated:

> Thus courts in "appropriate case[s]" may evaluate "the burden on the defendant,"
> "the forum State's interest in adjudicating the dispute," "the plaintiff's interest in
> obtaining convenient and effective relief," "the interstate judicial system's interest
> in obtaining the most efficient resolution of controversies," and the "shared
> interest of the several States in furthering fundamental substantive social
> policies." *World-Wide Volkswagen Corp. v. Woodson, supra*, 444 U.S., at 292,
> 100 S.Ct., at 564.

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-77, 105 S.Ct. 2174 (1985); *see also*

*Interlease Aviation Investors II*, 262 F.Supp.2d at 909. *But see In re Schwinn Bicycle Co.*, 192

B.R. 461, 475 (Bankr. N.D. Ill. 1996) (also including factors more appropriate under *forum non*

*conveniens* analysis, including the existence of and conflicts with the law of alternative foreign

forums). As in any typical personal jurisdiction controversy, a burden is placed on the

defendants to appear and defend in some far away forum, while the plaintiff would suffer

26

hardship if personal jurisdiction were lacking, because he would likewise be required to travel

afar to some remote jurisdiction to try to obtain effective relief against the defendants. Thus,

these opposing interests tend to cancel one another out in any sort of balancing of the above

criteria. In this case, it is admittedly burdensome for Kennett and Hamilton to come from

Scotland to defend in the United States, while it would be burdensome for the Chapter 7 trustee

to go to Scotland to try to obtain relief against Kennett and Hamilton. In this instance, it could be

said that the balance tips in favor of the trustee, because the individual defendants reached out to

the United States by voluntarily forming a business entity here and conducting it profitably;

removed the funds and other assets from the entity, leaving it without anything other than $73 to

pay legitimate creditors in the same forum; and then voluntarily caused the debtor to invoke the

laws and protections of Chapter 7 of the U.S. Bankruptcy Code by signing and filing the requisite

bankruptcy petition on behalf of the debtor. Furthermore, it is a stretch to claim that it is

fundamentally unfair for the Unites States to assert jurisdiction over the defendants because their

distance from the forum is too far only when they are being sued but not when engaging in other

activities that are advantageous to them. Moreover, the trustee is located here because Kennett

and Hamilton caused the debtor to file the bankruptcy case here, and even bankruptcy-estate

creditor SDI has not reached out to Scotland other than to assert (in a foreign insolvency

proceeding for an affiliated entity) legal rights that have their origin in Teknek, LLC's conduct in

the United States. The Scottish defendants' likelihood of being disadvantaged by culture shock

is also reduced by the fact that this is an English-speaking country using a common-law legal

system. *Cf. Federalpha Steel LLC Creditors Trust v. Fed. Pipe & Steel Corp. (In re Federalpha*

*Steel LLC)*, 341 B.R. 872, 889 (Bankr. N.D. Ill. 2006) (same conclusion for Canadian defendant).

The whole concept of a burden is not what it was when the doctrine was born, either, due to advances in modern communication and travel and the use of local counsel. *Cf. Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474, 105 S.Ct. 2174 (1985); *Interlease Aviation Investors II (Aloha) L.L.C. v. Vanguard Airlines*, 262 F.Supp.2d 898, 911 (N.D. Ill. 2003) (citing *Birnberg v. Milk St. Residential Associates Ltd. Partnership*, 2003 WL 151929 (N.D. Ill. Jan 21, 2003)). The Supreme Court also recognized that the weighing of the defendant's burden may be reduced by the availability of venue-change provisions. *Burger King Corp.*, 471 U.S. at 477, 483-84. The defendants' burden within and across the U.S. court system, at least to the extent it is based on an inappropriate or tenuously linked venue, could be accommodated through bankruptcy provisions. 28 U.S.C. § 1412; Fed. R. Bankr. Pro. 1014(a) & 7087.

Moreover, the forum's interest in adjudicating the dispute, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies all favor a finding that the United States' exercise of personal jurisdiction in this matter is fundamentally fair. First of all, the only noninsider creditor of this bankruptcy estate holds a significant judgment issued by the same sovereign here asserting personal jurisdiction – the United States – for a violation of the federal patent laws. The United States has an additional interest in the resolution of this adversary proceeding and bankruptcy case inasmuch as the U.S. Bankruptcy Code is also the sovereign's law, and the defendants may have removed money and assets from this U.S. debtor in anticipation of invoking the bankruptcy law. The adjustment of the debtor-creditor relationship is a federal concern, and one of the policies underlying the substantive law in this area is the notion that a single federal forum ought to have the power to bring before it all matters

28

with respect to a single bankruptcy debtor so that all such matters may be handled more
efficiently, consistently, and expeditiously than if they were scattered throughout various courts.
28 U.S.C. § 1334(a) & (e) (exclusive federal jurisdiction over bankruptcy case and property of
the bankruptcy estate); 11 U.S.C. § 362(a) (automatic stay of numerous proceedings against the
debtor in other forums); *see also In re Earle Industries*, 72 B.R. 131, 134 (Bankr. E.D. Pa. 1987)
("[C]ourts must be mindful that . . . current section 1334(a), (b) also represent[s] a studied
Congressional decision to broaden bankruptcy jurisdiction in order to bring into one forum all
matters related to the bankruptcy case so as to facilitate the administration of bankruptcy cases.");
*Federalpha Steel LLC Creditors Trust v. Fed. Pipe & Steel Corp. (In re Federalpha Steel LLC)*,
341 B.R. 872, 889 (Bankr. N.D. Ill. 2006). To the contrary, a finding that this forum lacks
personal jurisdiction would cause a splintering of the litigation in this bankruptcy case, with the
trustee trying part of the fraudulent-transfer action here against the Kenham and Tekena
defendants and the other part involving the same original set of facts in the United Kingdom
against Kennett and Hamilton. A U.S. Bankruptcy Court also has a federal interest in hearing
"core" bankruptcy matters, *see In re Federalpha Steel LLC*, 341 B.R. at 889, and at a minimum,
the Count I fraudulent-transfer action would be a core proceeding as a result of 11 U.S.C. §
544(b), *see* 28 U.S.C. § 157(b)(2)(H); *In re Mankin*, 823 F.2d 1296, 1299-1300 (9th Cir. 1987).

Additionally, Illinois has an interest in the outcome of the present adversary proceeding.
The Chapter 7 debtor Teknek, LLC was physically situated in Illinois, conducted its business
from that forum, and was formed under its limited-liability-company laws. Kennett and
Hamilton, as members, left this Illinois interest without assets to pay its creditors as declared in
the Chapter 7 petition. The alleged subsequent-transferee defendants in this same case with

29

whom Kennett and Hamilton continued the new U.S. distributorship agreements from Teknek

Manufacturing – Kenham, LLC and Tekena USA, LLC – share Teknek, LLC's characteristics.[8]

Counts I through IV against Kennett and Hamilton, detailed more completely above, each

ultimately depend on Illinois statutes and common law (though each one is encompassed by

bankruptcy jurisdiction through 11 U.S.C. § 541(a) or § 544(b)). A federal court located in

Illinois is situated to address these Illinois interests as part of the collective federal proceeding

that is intended under the federal bankruptcy law (while, by comparison, a court in the United

Kingdom would be remote from the Illinois forum, the Illinois debtor, and the Illinois law

governing it). To the extent that a California business interest was harmed financially, is unable

to collect on the judgment compensating for the harm, and is thus a creditor in this Chapter 7

case, the state of California has an interest in the outcome of this adversary proceeding against

Kennett and Hamilton as well.

The United States forum, the interstate judicial system, and financial concerns in two of

the several states all have an interest in seeing that their laws, their insolvency procedures, or

their financial stakes have some impact on this adversary proceeding against Kennett and

Hamilton. Kennett and Hamilton would need to make a compelling case that notions of fair play

and substantial justice prevent an exercise of personal jurisdiction in spite of minimum contacts.

The additional "fair play" considerations weigh in the opposite direction and make the trustee's

assertion that this federal forum may exercise personal jurisdiction over the movants even more

powerful.

---

[8]That is, they are physically situated in Illinois, conduct their business from that forum, and were formed
under its limited-liability-company laws. Kennett and Hamilton are the only members of Kenham, LLC, and one of
their foreign "Teknek" entities holds the distributorship license for Tekena USA, LLC's operation.

Finally, as an evidentiary issue, the Court notes that Kennett and Hamilton's affidavits –
to the extent that they contain factual assertions rather than legal conclusions about the
relationship of their "contacts" to this litigation – are uncontroverted by any plaintiff's affidavit,
even though a plaintiff is generally permitted to controvert in that manner. The facts sworn,
however, being based on several misapprehensions of the law, are legally insufficient to
undermine the existence of personal jurisdiction based on the factual allegations in the amended
complaint. While a defendant may controvert factual assertions in the complaint by means of
affidavits and other evidence, the complaint in this adversary contains a considerable amount of
detail, while the affidavits of Kennett and Hamilton contain comparatively little information that
is both purely factual and contradictory to any critical data in the complaint.

B. Motion to Dismiss on the Basis of the *Forum Non Conveniens* Doctrine

Anytime an action is commenced before a federal court and a foreign country is a better
forum for the suit because the oppression of the defendant far outweighs the convenience of the
plaintiff, the defendant may move for dismissal under the doctrine of *forum non conveniens*, even
if both personal and subject-matter jurisdiction exist. Dismissal is supposed to be the exception
and not the rule in cases such as the one at bar, since there is a presumption in favor of a U.S.
plaintiff's federal-court home-forum choice. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 102
S.Ct. 252, 265-66 (1981); *Kamel v. Hill-Rom Co.*, 108 F.3d 799, 803 (7th Cir. 1997); *Bank of
Credit and Commerce International v. State Bank of Pakistan*, 273 F.3d 241, 246 (2nd Cir. 2001).
"The defendant bears the burden of proof on all elements of the motion . . . ." *Bank of Credit &
Commerce Int'l v. State Bank of Pakistan*, 273 F.3d 241, 246 (2nd Cir. 2001). The decision
whether or not to dismiss a case under this doctrine involves a two-part inquiry.

31

1. The Availability of an Adequate Alternative Forum

First, a defendant moving for dismissal must first be able to show that there is an

adequate alternative forum with jurisdiction. *Kamel v. Hill-Rom Co.*, 108 F.3d 799, 802-03 (7th

Cir. 1997). The proposed adequate alternative forum in the present situation is the U.K.

insolvency proceeding for Teknek Electronics, Ltd. After creditor SDI obtained its patent-

infringement judgment against the Chapter 7 debtor in the United States and against Teknek

Electronics in Scotland, SDI filed a civil action in the Court of Session against the latter

defendant in February 2005 in an attempt to collect the judgment overseas. Teknek Electronics,

however, ended up the subject of an insolvency petition filed on May 26, 2005, pursuant to the

United Kingdom's Insolvency Act of 1986. Kennett and Hamilton contend that this insolvency

petition is not only an adequate alternative forum for the present claims against Kennett and

Hamilton but also a source of potentially inconsistent factual findings for this suit.

The problem is that if one carefully examines the civil case at bar closely, it reveals that

Kennett and Hamilton make this contention by identifying the wrong defendant, the wrong

plaintiff, and then to top things off, the wrong cause of action. The plaintiff in this adversary

proceeding is the Chapter 7 trustee, not creditor SDI.[9] If an insolvency petition is anything like a

---

[9]The defendants complain that the interests of the Chapter 7 trustee and SDI are identical because, for all practical purposes, SDI is the sole creditor of the estate; therefore, the plaintiff in this matter is SDI. This complaint has little force when considered in light of the fact that the defendants' own company filed the instant Chapter 7 petition voluntarily; creditors did not force an involuntary Chapter 7 case, as they sometimes do. If Kennett and Hamilton and their affiliated entities did not want to deal with a single-creditor bankruptcy case, they should not have caused the debtor Teknek, LLC to file the Chapter 7 petition.

Moreover, the various Teknek entities and Kennett and Hamilton have demanded strict observance of the boundaries separating the Teknek entities in this country and the United Kingdom. For instance, they have contended that the Chapter 7 debtor need not turn over its own customer list as estate property in the Chapter 7 case, because Teknek Electronics in Scotland, also owned by the defendants, terminated its license to access the list. If these companies are entitled to separate identities in spite of identical ownership, then, by the same token, a distinction between the bankruptcy estate and trustee, on one hand, and a creditor of this estate, on the other, is certainly warranted.

bankruptcy petition, then the plaintiff would be the creditor bringing a claim against an insolvent

debtor, or SDI bringing its 2004 judgment claim against the insolvent Teknek Electronics in

Scotland.   The defendants in this adversary proceeding are Kennett and Hamilton and other

American entities alleged to be subsequent transferees of fraudulent transfers within the meaning

of § 550(a) of the Code; Teknek Electronics is not a defendant in the case at bar.   Finally, the

causes of action presented in Counts I through IV, as detailed above, are all ultimately based on

what the law of Illinois has to say with respect to how Kennett and Hamilton handled the assets

of an Illinois limited liability company operating in Illinois.   In essence, they examine Kennett

and Hamilton's conduct with respect to the Chapter 7 debtor, Teknek, LLC; they do not examine

their conduct with respect to Teknek Electronics, Ltd. in Scotland.   The mere fact that some of

the alleged noncash fraudulent transfers under one of the four counts happened to pass through

Teknek Electronics as a conduit (before ultimately landing in the hands of other § 550(a)

transferee defendants in the present civil proceeding) does not mean that this Court will

adjudicate Teknek Electronics' liability for any of this conduct.[10]   The insolvency petition, in

contrast, deals first and foremost with a judgment for patent infringement committed by Teknek

Electronics and against a company based in California.   It would also be eminently conceivable

that the proceeding would encompass fraudulent conveyances **by that debtor**, Teknek

---

[10]To the extent that Teknek Electronics, Ltd. may have some type of transferee liability under § 550(a) of
the Code relating to multiple fraudulent transfers of the present Chapter 7 debtor's assets (as opposed to fraudulent
transfers of its own assets in Scotland), the present adversary proceeding could not possibly result in any type of
inconsistent factual findings that will harm it in any way, since it is a nonparty.   Under the law of collateral estoppel,
a nonparty may, using "offensive nonmutual issue preclusion," take advantage of a federal court's findings with
respect to issues that have been actually litigated to the disadvantage of a common party.   *Syverson v. International
Business Machines Corp.*, 461 F.3d 1147, 1153-55 (9th Cir. 2006).   A federal court's resolution of specific issues
may never be used against someone who was not a party to prior litigation.   *Id.*   The ultimate resolution of this
adversary proceeding would either help or not harm in any future litigation against Teknek Electronics, Ltd. in the
United States.

Electronics, Ltd., **of that debtor's assets**. A fraudulent transfer of a U.K. entity's assets to avoid a judgment is not a fraudulent transfer of a U.S. entity's assets to avoid the same judgment. On its face, the insolvency petition filed pursuant to U.K. law does not provide a clear alternative forum for the distinct parties and claims at issue in Counts I through IV.[11]

It is also conceivable that some other less specialized proceeding would be adequate for bringing claims against Kennett and Hamilton. This would require a showing of both availability and adequacy of the forum. An alternative forum is available if the **defendant** is amenable to service of process in the foreign jurisdiction. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 102 S.Ct. 252, 265 & n.22 (1981). *But see Kamel v. Hill-Rom Co.*, 108 F.3d 799, 803 (7th Cir. 1997) (stating in dicta that availability requires that "all parties are amenable to process and are within the [foreign] forum's jurisdiction," apparently even the plaintiff). "An alternative forum is adequate when the parties will not be deprived of all remedies or treated unfairly." *Kamel v. Hill-Rom Co.*, 108 F.3d 799, 803 (7th Cir. 1997). The adequacy "standard does not require that the alternative forum provide the exact remedy sought from the domestic court." *Exter Shipping Ltd. v. Kilakos*, 310 F.Supp.2d 1301, 1320 (N.D. Ga. 2004).

The parties did not really focus on U.K. courts of general subject matter jurisdiction (analogous to most state trial courts in the United States) or the concept of general personal

---

[11]It is always possible that a foreign insolvency proceeding might pull in a variety of collateral litigation that impacts the administration of the insolvent estate, similar to the way that U.S. Bankruptcy Courts, by referral from the district courts, have jurisdiction over "all civil proceedings . . . related to cases under title 11." 28 U.S.C. § 1334(b) & § 157(a), (c). These latter proceedings are known as noncore proceedings that arise entirely under nonbankruptcy law but that nevertheless affect the amount of money and property to be distributed to creditors as part of the bankruptcy estate. But Kennett and Hamilton have made nothing more than a bare reference to the United Kingdom's Insolvency Act of 1986, failing to analyze any portion of the statute or cite even a single provision authorizing any particular type of parallel, collateral, or related litigation apart from the obvious debts owed by an insolvent estate to creditors. Kennett and Hamilton have not met their burden of demonstrating an adequate alternative forum in the form of an insolvency proceeding for an affiliated entity that is not a party to any of the litigation at bar.

jurisdiction in those courts, instead traveling down the more conceptually difficult corporate-affiliate-insolvency path. Because Kennett and Hamilton are both citizens and domiciliaries of the United Kingdom, it would seem plausible that certain courts of that jurisdiction would have something like general personal jurisdiction and could hear any and all causes of action against them, regardless of where or under what law they arose. *Cf. Exter Shipping Ltd. v. Kilakos*, 310 F.Supp.2d 1301, 1321 (N.D. Ga. 2004) ("The general rule controlling personal jurisdiction in the European Union (EU) is that persons domiciled in an EU state must be sued in that state.") (citing the Civil Judgments and Jurisdiction Act, 1982 (amended 2001), ch. 27 (Eng.)); *compare Kamel*, 108 F.3d at 804 (under federal law, recognizing "the maxim that the defendant's home forum always has an interest in providing a forum for redress for injuries caused by one of its citizens"). Considering the fact that the U.S. legal system is rooted in the British legal system, it can be assumed that were the trustee to sue Kennett and Hamilton in the United Kingdom, at least some appropriate remedies would be available, including money damages against its citizens. *Cf. Exter Shipping Ltd. v. Kilakos*, 310 F.Supp.2d 1301, 1322 (N.D. Ga. 2004) (finding, as result of possible compensatory damages, "that the diminished likelihood of a punitive damages award does not render the United Kingdom courts' remedy insufficient.").

Kennett and Hamilton are entitled to the benefit of the doubt on this one; the United Kingdom would provide an adequate alternative forum. To say that another forum is available and adequate says nothing about what law should apply, what forum is convenient or efficient, or whether a controversy is merely of local interest to that forum, which brings us to the next set of considerations.

2. The Balancing of Private and Public Factors

35

The Court must next determine whether a balancing test weighs in favor of dismissal after considering both private and public/systemic factors. Generally speaking, "the party moving to dismiss for forum non conveniens [bears] the burden of making a 'clear showing' of facts that either '(1) establish such oppression and vexation of a defendant as to be out of proportion to the plaintiff's convenience, which may be shown to be slight or nonexistent, or (2) make trial in the chosen forum inappropriate because of considerations affecting the court's own administrative and legal problems.'" *Ito v. Tokio Marine & Fire Ins. Co., Ltd.*, 166 Fed.Appx. 932, 934 (9th Cir. 2006) (quoting *Miskow v. Boeing Co.*, 664 F.2d 205, 208 (9th Cir.1981)); *see also Kamel*, 108 F.3d at 802. The private-interest considerations include (1) the availability of compulsory process to obtain the presence of unwilling witnesses, (2) the costs of obtaining the attendance of willing witnesses, (3) the ease of access to sources of proof, (4) the ability to view any relevant premises, and (5) the overall convenience and fairness of the chosen forum to each party. *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508, 67 S.Ct. 839, 843 (1947). The primary public/systemic factors include the strength of another country's interest in having localized controversies decided at home; the ease of trying a diversity case in a forum at home with the substantive law, or, alternatively, the difficulty in applying either foreign law or domestic conflicts-of-law- rules; and court congestion. *Kamel v. Hill-Rom Co.*, 108 F.3d 799, 803 (7th Cir. 1997).

Kennett and Hamilton make the sensational assertion that the law of Scotland would apply to Counts I through IV on page 17 of their brief, since "the Northern District of Illinois has no interest at all in this litigation." To the contrary, only Illinois law could possibly apply. Counts I through IV on their face are counts brought pursuant to Illinois law, which makes sense considering the factual bases for these claims. The Chapter 7 debtor Teknek, LLC was

36

physically situated in Illinois, conducted its business from that forum, and was formed under its limited-liability-company laws.  Kennett and Hamilton, as members, left this Illinois interest without assets to pay its U.S. creditors, as declared in the Chapter 7 petition.  (The additional subsequent-transferee defendants to whom Kennett and Hamilton extended continuing U.S. distributorship agreements from Teknek Manufacturing share the first three characteristics.) Counts I through IV against Kennett and Hamilton each ultimately depend on what the law of Illinois (brought within bankruptcy jurisdiction through 11 U.S.C. § 541(a) or § 544(b)) has to say with respect to how Kennett and Hamilton handled the assets of an Illinois limited liability company operating in Illinois.  A federal court located in Illinois is situated to address these Illinois interests as part of the collective federal proceeding that is intended under the federal bankruptcy law (while, by comparison, a court in the United Kingdom would be remote from and unfamiliar with the Illinois forum, the Illinois debtor, and the Illinois law sources governing both).  Furthermore, no "need to apply complex bodies of law" appears to exist for this Court in this case.

For these same exact reasons Illinois has an interest in this litigation, meaning that it is not merely a localized controversy to be decided in some other home forum.  Additionally, the United States has an interest in liquidating insolvent U.S. debtors consistent with the policies in the U.S. Bankruptcy Code.  Kennett and Hamilton base their arguments on an oversimplified description of the nature of this case focusing nearsightedly on the planning, control, operation, and decision making in which they engaged in Scotland and not on any of the ramifications of their behavior in other jurisdictions.  This is not a case in which a U.S. bankruptcy-estate creditor had a business relationship with Kennett and Hamilton centered in Scotland but decided to sue

37

back in the United States under foreign law by means of diversity jurisdiction. Rather, we have various claims in the nature of torts spanning multiple jurisdictions; the parties had no prior relationship; and the relevant planning occurred in Scotland while the execution and action for this planning, in addition to its effects, occurred largely in the United States. Furthermore, this proceeding is not the type of "localized controversy" that can be said to have any "home" at all, let alone one requiring this Court to dismiss the litigation in favor of some more obvious "home."

For similar reasons, factors relating to the ease of access to sources of proof and the ability to view relevant premises do not weigh heavily in one direction or the other. The Chapter 7 debtor's computer data, business documents, customers' correspondence, and bank-account records relating to money and assets transferred by either movement or documents of title are located in both countries. The other transferee defendants, Teknek America/Kenham, LLC (also owned by Kennett and Hamilton) and Tekena USA, LLC, are also physically present in this jurisdiction.

Kennett and Hamilton place great reliance on the fact that the "primary witnesses," a certain accounting firm in the U.K., and one of their own Teknek Manufacturing accountants, Colin MacKillop, are located in the United Kingdom. They also contend that the firm would not be subject to the jurisdiction of the U.S. courts. While these considerations do favor the private interests of Kennett and Hamilton, it is not true that "all of the relevant witness are located in Scotland," as alleged. The plaintiff Chapter 7 trustee can designate witnesses just like any other party in any other suit. In this case, four of the individual defendants originally sued in addition to Kennett and Hamilton were the four individuals who at one time were the employees operating the judgment-proof Chapter 7 debtor and who now are the four members of § 550(a) transferee

38

defendant Tekena USA, LLC. Thus, they have intimate knowledge concerning the assets, finances, and transfers of all these entities, and, more importantly, have actually operated all affiliated businesses in Illinois. Their traveling to the United Kingdom for trial at the trustee's behest would be every bit as inconvenient as the Scottish accountants traveling here for trial. Moreover, at least three of these four individuals were apparently never citizens or residents of the United Kingdom, so their amenability to process in the United Kingdom is at least questionable. In the end, the private-interest factors pertaining to willing and unwilling witnesses come out as a wash, as do the related considerations of the relative convenience of each forum for each party.

In conclusion, having failed to come close to establishing the second necessary element, Kennett and Hamilton have not overcome the presumption in favor of a U.S. plaintiff being able to sue in a U.S. federal court.

## ORDER

For the reasons stated in the Memorandum Opinion, the "Motion to Dismiss Amended Adversary Proceeding Against Sheila Hamilton and Jonathan Kennett for Lack of Personal Jurisdiction, Forum Non Conveniens and Failure to State a Claim Pursuant to Rule 7012(b) of the Federal Rules of Bankruptcy Procedure" is hereby DENIED in all respects.

Dated:  October 16, 2006                    ENTERED:

_____
Jacqueline P. Cox
United States Bankruptcy Judge